N.D.N.Y.
18-cv-1419
D'Agostino, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of November, two thousand nineteen.

Present:

José A. Cabranes,
Reena Raggi,
*Circuit Judges*,
Edward R. Korman,*
*District Judge*.

---

New Hope Family Services, Inc.,

*Plaintiff-Appellant*,

v. No. 19-1715

Sheila J. Poole, in her official capacity as Acting Commissioner for the Office of Children and Family Services for the State of New York,

*Defendant-Appellee*.

---

**FOR PLAINTIFF-APPELLANT:** Roger G. Brooks, Alliance Defending Freedom, Scottsdale, AZ.

**FOR DEFENDANT-APPELLEE:** Laura Etlinger, Assistant Solicitor General, Andrea Oser, Assistant Solicitor General, Barbara D. Underwood, Solicitor General, *for* Letitia James, Attorney General, State of New York, Albany, NY.

Plaintiff New Hope Family Services, Inc. ("New Hope"), is a Christian ministry

---

* Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

incorporated under the laws of New York and authorized to provide adoption services within that state. It does not provide those services pursuant to any contract with the State, nor does it receive any State funding.

New Hope is before this court on appeal from the dismissal of its action in the United States District Court for the Northern District of New York challenging on First Amendment grounds defendant's decision to condition New Hope's continued adoption authorization on its confirmation of compliance with 18 NYCRR § 421.3(d). That regulation states that "[a]uthorized agencies providing adoption services shall . . . prohibit discrimination and harassment against applicants for adoption services on the basis of," *inter alia*, "sex, sexual orientation, gender identity or expression, [or] marital status." 18 NYCRR § 421.3(d). New Hope asserts that it cannot provide the requested confirmation consistent with its religious beliefs, which do not permit it to certify a same-sex or cohabiting-unmarried couple as adoptive parents. OCFS does not appear to question the sincerity of New Hope's religious beliefs. Nevertheless, it maintains that such beliefs cannot excuse New Hope from complying with laws of general application such as § 421.3(d).

New Hope now moves this court for a preliminary injunction to prevent defendant from enforcing its § 421.3(d) confirmation demand pending appeal. Specifically, it seeks an order that allows it to continue providing various adoption services that have already begun and that are ongoing. At the same time, it agrees not to accept ANY new prospective adoptive parents for its services. It further agrees to provide defendant with various information relative to its adoption services.[1]

Four factors are properly considered in deciding whether to grant New Hope a preliminary injunction pending appeal: (1) the likelihood of it succeeding on the merits, (2) the likelihood of it suffering irreparable injury without such an injunction, (3) the likelihood of substantial injury to defendant if an injunction is issued, and (4) the public interest. *See, e.g.*, *Mohammed v. Reno*, 309 F.3d 95, 100–01 (2d Cir. 2002). In considering these factors, "'[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff[] will

[1] The terms New Hope proposes for the requested injunction were apparently developed during earlier negotiations between the parties, which failed in August 2019. At that point, defendant requested that, within fifteen days, New Hope confirm compliance with § 421.3(d) or begin closing its adoption program – which it describes as a "choice." Defendant has agreed to toll this period pending a ruling on New Hope's motion for a preliminary injunction. Because New Hope does not operate pursuant to a State contract or receive any state funding, the source of defendant's authority to demand closure is not apparent on the motion record. The parties are asked to clarify this point in their submissions to the merits panel.

suffer absent the [injunction].'" *Id.* (quoting *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F. 2d 150, 153 (6th Cir. 1991) (brackets in *Mohammed*); *see id.* (citing approvingly to *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.3d 841, 843 (D.C. Cir. 1977) (stating that "necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other . . . factors"). The last point is significant in this case because, while New Hope has a plausible First Amendment claim on appeal, the likelihood of it succeeding on that claim is difficult to assess in advance of full briefing. On the other hand, the likelihood of it sustaining serious, irreparable injury absent an injunction is evident and the remaining two factors also tilt decidedly in its favor.

The likelihood of New Hope succeeding on the merits requires careful review of complex precedent construing the First Amendment's Free Exercise Clause.[2] *See* U.S. Const. amend. I. While that Clause undoubtedly prohibits the government from "compel[ling] affirmation of religious belief, punish[ing] the expression of religious doctrines it believes to be false, impos[ing] special disabilities on the basis of religious views or religious status, or lend[ing] its power to one or the other side in controversies over religious authority or dogma," *Employment Div. v. Smith*, 494 U.S. 872, 877 (1990) (internal citations omitted), it does not "relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)," *id.* at 879 (internal quotation marks omitted). Navigating between these two principles often depends on the precise circumstances at issue. *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S.Ct. 1719, 1727–29 (2018) (differentiating between clergy member's refusal to perform gay marriage ("well understood in our constitutional order as an exercise of religion"), baker's refusal to sell *any* cakes or goods for gay weddings (discriminatory commercial activity going "beyond any protected rights"), and baker's refusal to use his artistic skills in way that expresses endorsement of gay wedding (warranting "neutral and respectful consideration of his claims" in particular circumstances)). Thus, courts considering Free Exercise Clause claims in the context of religious organizations providing adoption or foster care services have reached different conclusions depending on the circumstances. *Compare Fulton v. City of Philadelphia*, 922 F.3d 140 (3d Cir. 2019) (denying Catholic Social Services ("CSS"), which City funded to provide foster care services pursuant to contract, an injunction requiring City to renew contract even though CSS refused to certify same-sex couples as foster parents), *with Buck v. Gordon*, No. 1:19-CV-286, 2019 WL 4686425 (W.D. Mich. Sept. 26, 2019) (granting preliminary injunction to Catholic agency that did not certify same-sex couples as adoptive or foster-care parents, but did

---

[2] New Hope also raises compelled-speech and freedom-of-association claims under the First Amendment; they present equally challenging questions of law and fact, and therefore warrant no different analysis to decide this motion.

refer them to agencies that would so certify, upon finding that record as whole admitted strong inference that defendant's "real target" was religious beliefs, not discriminatory conduct). On the motion record here, the court can conclude only that New Hope may succeed on the merits of its appeal; the likelihood of such success cannot confidently be predicted in advance of reviewing the circumstances and law as more fully presented by the parties in their merits briefs.

What can be determined even on the motion record, however, is that New Hope will suffer irreparable injury without the requested preliminary injunction pending appeal. A denial of the injunction would trigger defendant's demand that, within fifteen days, New Hope either (1) compromise its religious beliefs by providing the demanded confirmation of compliance with § 421.3(d) or (2) close its adoption ministry. Both options demonstrate specific, irreparable First Amendment injury resulting from defendant's enforcement of § 421.3(d). *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349–50 (2d Cir. 2003) (collecting cases).

At the same time, the motion record demonstrates that the requested injunction causes defendant no serious injury. This is in no small part due to New Hope's agreement not to accept any new prospective adoptive parents for adoption services, thereby avoiding future disparate treatment of same-sex and unmarried couples relative to other prospective adoptive parents pending appeal. In urging otherwise, defendant submits that, under the proposed injunction, same-sex and unmarried couples who previously refrained from using or were excluded from New Hope's services, will continue to be excluded from the opportunity to adopt children that New Hope is in a position to place. At present, such injury must be viewed as more hypothetical than real because the motion record does not demonstrate the existence of any such couples.[3]

In any event, the strong public interest pertaining to adoption services, *i.e.*, the welfare of children, both those already adopted and those awaiting adoption, is best served by granting rather than denying the requested injunction. By allowing New Hope to continue supervising placements already made (and with which it is therefore particularly familiar), the injunction ensures continued informed supervision without unnecessary disruption to the families involved. By allowing New Hope to continue its review of already pending adoption applications, the injunction avoids delaying the benefits of adoption to children awaiting placement. To be sure,

---

[3] In its complaint, New Hope alleges that it has never denied a same-sex or unmarried couple's adoption application. Rather, when such couples have approached New Hope about adoption, it has referred them to another provider or the country social services office. Nothing in the motion record indicates whether such couples were or were not able to pursue adoptions by these alternative channels, much less the legal significance of any such post-referral activity.

the public also has an interest in there being equal access to public services, but that concern is significantly reduced here by New Hope's agreement not to accept any new applicants for adoptive services pending this appeal.

The court having thus determined that the equities warrant granting New Hope's motion for a preliminary injunction, it is hereby ORDERED that, pending a decision on this appeal,

1. Defendant shall not require New Hope to confirm its compliance with 18 NYCRR § 421.3(d).
2. New Hope shall not accept any new prospective adoptive parents for adoption services.
3. New Hope may continue the adoption study process for any individuals who completed New Hope's orientation prior to the commencement of this lawsuit.
4. New Hope shall provide the New York State Office of Children and Family Services ("OCFS") with a list naming each applicant to be an adoptive parent and each approved adoptive parent.
5. New Hope may continue to supervise placements of children in its legal custody.
6. New Hope may continue to accept surrenders of children and to place out children with approved adoptive applicants.
7. New Hope will inform OCFS when a child is placed with an approved adoptive parent as well as when an adoption is finalized.

The court having ordered that the appeal be expedited, the matter will remain with this panel, which will hear argument on November 13, 2019 at 1:00 p.m.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

